Dorothy GAUTREAUX, et al., Plaintiff,

v.

Jack KEMP, Secretary of Department of Housing and Urban Development, & Chicago Housing Authority, Defendants.

No. 66 C 1459, 66 C 1460.

United States District Court, N.D. Illinois, E.D.

Aug. 15, 1990.

Alexander Polikoff, Howard A. Learner, Chicago, Ill., for plaintiff.

U.S. Attorney's Office, Robert Grossman, Roan & Grossman, Patrick W. O'Brien, Mayer, Brown & Platt, Richard Flando, Acting Regional Counsel, Dept. of Housing & Urban Development, Stanley J. Garber, Corp. Counsel, Calvin H. Hall, Gen. Counsel, Earl L. Neal, Sp. Asst. Corp. Counsel, Chicago, Ill., Jane McGrew, Gen. Counsel, Dept. of Housing and Urban Development, Washington, D.C., Gerald D. Skoning, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

This is yet another battle in the long-standing war to construct public housing in the City of Chicago. In 1966, approximately 43,000 black tenants of public housing filed these actions against the Chicago Housing Authority ("CHA") and the Department of Housing and Urban Development ("HUD"). In the early stages of the litigation, both agencies were found to have discriminated on the basis of race in their selection of housing sites and in the administration of racial quotas. In 1981, the parties entered into a consent decree which purportedly terminated the litigation. *Gautreaux v. Pierce*, 690 F.2d 616, 619–621 (7th Cir.1982). However, paragraph 8.1 of the consent decree provides for retention of jurisdiction by the district court in order to enter orders involving the construction, implementation, modification or enforcement of the decree. *Gautreaux v. Pierce*, 707 F.2d 265, 266 (7th Cir.1983).

The matter is currently before us on the petitions of the Edgewater Community Council ("Edgewater") and the Southeast Side Residents for Justice ("SERJ") to intervene as plaintiffs. Edgewater and SERJ are community groups that oppose the construction of public housing in the census tracts where their members are residents. This housing is part of the scattered site program undertaken by Habitat, the court appointed receiver ("Receiver"), in which 101 family townhomes will be built on 11 different sites. The petitioners ultimately seek to enjoin the construction projects which are scheduled in their neighborhoods. Edgewater and SERJ offer two legal arguments in favor of their petitions to intervene. First, both contend that the proposed scattered site housing violates the terms of the consent decree because the construction of townhomes will create an excess of assisted housing in their neighborhoods. Second, both groups maintain that intervention is warranted because of the effect that the townhome construction will have on their community. In the case

of Edgewater, the claim is that construction of the townhomes will result in resegregation of the neighborhood, thereby depriving residents of their purported "right to live in a racially integrated area" and hastening "the creation of a racially segregated area." SERJ, on the other hand, claims that their area has been "99% black" for the past 20 years. SERJ suggests that they should be permitted to attempt to halt construction because the project will impede the integration of their neighborhood.

We find that, on the record before us, neither petitioner is entitled to intervene in the proceedings. The petitions of both Edgewater and the SERJ suffer from two fatal deficiencies. First, neither party has standing to intervene in the dispute. Second, neither party has fulfilled the requirements of Fed.R.Civ.P. 24 governing permissive and mandatory intervention.

■ Obviously, before a party is permitted to intervene in a dispute, it must be evident that this party has standing under Article III of the Constitution. *See, e.g., Jorman v. Veterans Admin.,* 830 F.2d 1420, 1424 (7th Cir.1987). In order to satisfy the standing requirement, a party must be able to show that it has suffered a concrete actual or threatened injury and that this injury is fairly traceable to the challenged conduct. *Id.* In this case, Edgewater and SERJ suggest that both violations of the consent decree and the alleged detrimental effect of the project on their neighborhoods constitute an injury sufficient to give them standing to intervene.

While a violation of the consent decree would constitute an injury under the standing requirement, neither party has sufficiently established that the scattered site program violates the *Gautreaux* consent decree. According to both petitioners, the scattered site program will result in a level of assisted housing in excess of the 15% maximum level prescribed in the decree. However, neither party has produced sufficient factual support for its contention. While Edgewater lists various housing units in support of its contention that the 15% limit has been exceeded, many of these units are not assisted housing within the meaning of the consent decree. In fact, Edgewater is far below the 15% threshold outlined in the decree. Moreover, Edgewater relies on statistics that deal only with a portion of the census tract, the relevant unit of measurement under the decree. The SERJ has also failed to present any facts to support their allegation that the 15% limit has been exceeded in their census tract. In addition, their allegations also appear to deal only with a portion of the relevant census tract, rather than the tract as a whole. Therefore, in the absence of any factual support for this contention, the claimed violation of the consent decree is insufficient to create Article III standing.

■ Similarly, the alleged effect that the scattered site program would have on the petitioners' respective neighborhoods does not confer standing. Regardless of whether the alleged detrimental effect of the program is cognizable as an injury, this injury is not fairly traceable to the conduct challenged by the petitioners. In *Jorman v. Veterans Admin.,* 830 F.2d 1420, the plaintiffs claimed that the practices of the Veterans Administration were causing resegregation in their community. The Seventh Circuit affirmed the district court's finding that alleged injury could not be shown to be fairly traceable to the challenged practices; the possibility that the Veterans Administration's practices were actually causing resegregation was too remote to confer standing.

The facts in this case are almost identical to those the Court faced in *Jorman.* Edgewater's contention that the scattered site program has caused or will cause resegregation is speculative at best. Moreover, Edgewater's own statistics, which show that resegregation has occurred independently of the program, suggest that the causal connection is nonexistent. Likewise, the SERJ contends that their neighborhood has been "99% black and 0% white" for the last 20 years. It is inconceivable that the Receiver's decision to build in their neighborhood has stifled or will stifle integration. Therefore, we find that both

Edgewater and the SERJ lack standing to intervene in this case.

However, even if we were to conclude that both organizations had standing, we would still deny the petitions to intervene. Neither party has demonstrated that intervention is appropriate under Fed.R. Civ.P. 24, which governs mandatory and permissive intervention. In order to establish that mandatory intervention is justified, the petitioner must show that their interests are not represented adequately by the existing parties. *See*, Fed.R.Civ.P. 24(a)(2); *American Nat. Bank & Trust v. City of Chicago*, 865 F.2d 144, 146 (7th Cir.1989).[1] Neither party has explicitly addressed this requirement, although the implicit suggestion of both petitions is that the existing plaintiffs do not represent their interests because the Receiver has been allowed to violate the consent decree. However, as discussed above, there is no indication that the decree has been violated. Moreover, the dedicated activity of plaintiffs and their counsel in this court proceeding over the past 24 years demonstrates that any proper interest that petitioners may have in this proceeding will be more than adequately represented. Therefore, we find that there is no basis for a finding that the petitioners' interests are not adequately represented. We also find that the petitioners have made no showing that they have a claim or defense in common with an existing party, and therefore cannot meet the requirements for permissive intervention under Fed.R.Civ.P. 24(b). Accordingly, because both Edgewater and SERJ have failed to satisfy the requirements of Fed.R. Civ.P. 24, neither party is entitled to intervene in the matter.[2]

Having concluded that Edgewater and SERJ cannot intervene in the dispute, we must stress that we do not intend to foreclose citizens' groups from intervening in every circumstance. On the contrary, we have allowed a citizens' group to intervene when it can establish that the consent decree has been violated, and that existing parties do not adequately represent their interests. *See, e.g., Gautreaux v. Pierce*, 548 F.Supp. 1284 (1982). When a group can demonstrate that a particular site selection violates the terms of the decree, intervention would not only be appropriate, but welcomed. However, when the site selection is in conformance with the decree, as in the present case, the proposed intervenor merely seeks another forum to attack the determination of the CHA and the Receiver. In this circumstance, the petitioner merely invites the Court to substitute its judgment for the judgment of the CHA and the Receiver. It would be both unfeasible and highly inappropriate for the Court to review every decision made by these parties.

Similarly, our denial of these petitions to intervene should not be interpreted as a slight to the importance of the role of community groups in decisions of this nature. On the contrary, we recognize that community groups such as Edgewater and the SERJ fulfill an important and vital role in selecting sites for public housing. This role is not diminished by their legal right to intervene in this case.

We encourage both the CHA and the Receiver to recognize and respect the productive role that community groups can play in the site selection process and in gaining community support for site selection decisions. Petitioners complain that after a site has been selected, an announcement of the selection is often made months or years later. If this is true, we can sympathize with petitioners' frustrations and would urge the CHA and the Receiver, consistent with the efficient performance of their duties, to remain sensitive to the need to keep neighborhood groups informed of site selection developments and procedures in their respective communities.

1. A party is also entitled to intervention if this right is conferred by a federal statute. However, in this case, there is no such statute.

2. Edgewater's citation of *Martin v. Wilks*, 490 U.S. 754, 109 S.Ct. 2180, 104 L.Ed.2d 835 (1989) is inapposite. This case involved a party's ability to bring a separate action when a consent decree in a different action had impacted the challenged conduct. The case has no bearing on a party's rights to intervene in the underlying proceeding.

In sum, although we recognize and commend the good faith of the well motivated petitioners, we cannot second guess site decisions of the CHA and the Receiver which do not violate the consent decree. Accordingly, the petitions of the Edgewater Community Council and the Southeast Side Residents for Justice to intervene are denied.  It is so ordered.